Thank you, Chief Judge Richmond, and may it please the Court, Your Honors, for decades under Stinson v. United States, the doctrine we lawyers know as Seminole Rock or our deference has applied in the exact same way to the Sentencing Commission's Guidelines Commentary as it has applied to all other agency rule interpretations. Four years ago in Kaiser v. Wilkie, the Supreme Court decided that Seminole Rock deference should still be a thing, but it severely narrowed that doctrine. What the Court told us and what it made clear was that a federal court is not to defer to what an agency says its regulation means unless it finds that regulatory text genuinely ambiguous after using all the ordinary tools of interpretation. So that brings us to this case. The primary question before the full Court is whether what Kaiser had to say about Seminole Rock deference applies to the Guidelines Commentary. Both parties before you today agree that the answer is yes. Stinson affirmatively held that Seminole Rock deference applies to the Commentary. Kaiser clarified that there can be no Seminole Rock deference without genuine ambiguity. So of course, the same limitation governs the same doctrine's continued application to the Commentary. Four courts of appeals, including two sitting on bonk, have reached that straightforward conclusion. We're simply asking this Court to join them in holding that after Kaiser, courts are not bound to commentary that expands the substantive reach of unambiguous guideline text. And when it comes to Mr. Vargas, my client, that clear rule also happens to dictate the answer to the second question presented. The text of Guidelines Section 4B1.2b is not ambiguous. It sets out an exhaustive list of qualifying controlled substance offenses. Conspiracies and attempts are not on that list. That means the Commentary purporting to add those two and co-eight offenses isn't entitled to deference, and it means Mr. Vargas' conspiracy convictions shouldn't have triggered the career offender enhancement. But here, too, the Court doesn't need to take Mr. Vargas' word for it. Five of this Court's fellow circuits, including here three sitting on bonk, have looked at and concluded that its plain language unambiguously excludes conspiracies and attempts. And three of those circuits have expressly rejected the government's request to add attempts and conspiracies into the guideline through a secondary meaning of the term prohibits. Now, there are a bunch of problems with that reading, but for now, I'll simply emphasize the fundamental flaw that led the en banc 11th circuit, or that the en banc 11th circuit found most compelling just last week in rejecting this very argument in the United States versus Dupree. Even if the Court could read this text to reach any offense that tends to hinder the listed elements in an abstract sense, there is no intellectually defensible way to limit that reading to attempts and conspiracies without also sweeping in numerous other unlisted offenses. The government's logic would readily extend the guideline's coverage to possession of drugs, solicitation of drugs, as well as more attenuated crimes like money laundering. But the Supreme Court already rejected that boundless reading in Salinas versus United States, the text we're looking at today, purposefully excludes mere possession offenses. And that, of course, only reinforces our contention that the exclusion of inchoate offenses is just as purposeful. So, in short, this is one of those cases where the most obvious answers are also right ones. Stinson held similar rock applies to the common theory, so Kaiser's clarification does, too. And Section 4B1.2, on its face, doesn't reach conspiracy offenses, so the common theory that would alter that, it's no deference. And with that, I would very much welcome the Court's questions. If we don't have any, I will move. Oh, no, I have a question. I subscribe. Counsel, in performing the Kaiser analysis, we're instructed to consider not only the Now, as I understand it, the history of this provision unambiguously included inchoate offenses in the earlier iterations, included not only the substantive offenses but also similar offenses. And so can't, shouldn't we, aren't we bound to take into account that history in understanding whether the current provision also includes inchoate offenses? And I ask because I don't see, with all the greatest respect in the world to our sister on-box circuits, I don't see them even mentioning the history of the provision. Well, Judge Duncan, there's a couple points to make about the history. First, I totally agree with you that Kaiser tells us that what we apply is the ordinary tools of interpretation. And of course, history and purpose and title and all sorts of other things can be indicators of meaning in certain situations. It's also the case, as Justice Kagan recognized in Kaiser, that when the interpretive inquiry stops at the plain meaning of the language on the page, you don't need to go any further. History, unexpressed purpose, those are types of things that can reveal meaning where there's doubt. But of course, you can always stop at the plain meaning. But as it comes, as it pertains to the history, I don't necessarily agree with the government's description of the history here. If you look at page nine of our brief, we've listed the first iteration of this commentary. First, the guideline text did not include inchoate offenses explicitly or unambiguously. It has always put them in the commentary. And in fact, if you look at that— The earlier iterations don't say and similar offenses? It does, but— And an inchoate offense is not similar to the underlying offense? That is what the first commentary said. No, I'm just asking, isn't conspiracy to distribute drugs similar to— Yes. If we had— Distribution of drugs. If we had that at all today, I wouldn't be making my argument. Are you saying aiding and abetting is not included? Judge Jones, that's a different issue than whether or not attempts and conspiracies are included. Well, it's certainly within your claim that prohibit doesn't include. I disagree. And I'll tell you why. First, I'll tell you why we think aiding and abetting might, in a case where that issue is raised, be something you would read into this text, but why attempts and conspiracies are not. And the reason is aiding and abetting is something that is part of the actual substantive completed offense. I agree with that. The Supreme Court told us that in Gonzales v. Gwinn. And what do we do with two things? Number one, that the overriding purpose of the guidelines is to attribute culpability and therefore imprisonment to similar types of crimes. You cannot give us a principle distinction why conspiracy or attempt are different from the actual drug crimes. Possession is obviously separate, not only because the Supreme Court said it, but because there's this hoary notion, totally unfounded out there, that federal drug crimes are based solely on possession. They are not. They are routinely charged altogether or in separate counts, and then they're pled out as one or another. So in co-op crimes and the actual crimes are functionally similar. And of course, number two, there's the fact that Congress specifically approved this commentary, which I know Judge Pryor said, well, we're not to consider that under Stinson. But it seems to me meaningful in this context that Congress did in fact approve this commentary involving in co-op crimes, drug crimes. There's a lot in there, Judge Jones, but I will try to get to both of your concerns. First, when it comes to purpose, I'm not standing here before you telling you that Congress, as a sentencing commission, didn't want to treat attempts and conspiracies as equivalent of completed offenses since the beginning of this commentary. The problem is it's always separated it. It's always used the actual text of the guideline that it has the authority under the Sentencing Reform Act to promulgate to only catch the completed offenses, and it's always only used the informal commentary to catch it. And so the purpose point you make is a good policy point, and it's one that the Sentencing Commission will have to reevaluate and is in fact reevaluating right now. But I do want to stress that in this situation, it does feel a little bit like form over substance. I understand that. But what the Supreme Court made clear in Stinson and in Kaiser and this entire deference doctrine is that the form is the substance, right? When an agency decides, when we're surrendering some of the judicial power to an agency to decide what its rules are, they have to cut square corners, right? And so . . . Well, we do except for the fact that ultimately judges don't even have to follow the guidelines. That is sort of a . . . which is partly why the Supreme Court recognized in Stinson that the commission isn't just your ordinary agency. You're right, Judge Jones, and it goes back further than Stinson. The Strata recognized that the United States Sentencing Commission is unique, but it is not unique in the sense of its rulemaking authority. Its rulemaking authority is exactly the same as all rulemaking. That's one of the reasons the guidelines and the commission's placement in the judiciary is constitutional, because rulemaking is rulemaking. We're talking about rulemaking. Counsel, let me ask you about . . . did I talk over somebody? I'm sorry. Thank you, Judge Wilson. What do you make of Stinson where it says the best analog is agency, executive branch agency interpretations of their own regulations, but it is just an analogy. One of the things it says, amended commentary is binding. This is Stinson. Amended commentary is binding on the federal courts, even though it is not reviewed by Congress. Well, factually, that is incorrect here. As Judge Jones has already pointed out, Chief Judge Pryor informed all of us, and some of my colleagues may have known that already, that this did go through Congress. So, it seems to me the analogy breaks down with this particular commentary. Judge Southwick, that's an important question. I'm glad you brought it up because I did want to get back to Judge Jones' point about . . . Well, I think it fits into Judge Jones' point about all this, but that's for you to decide. Go ahead. But I was trying to add that to your explanation. Thank you. And first, I do want to say, obviously, Stinson is binding. And so, we don't . . . this Court doesn't have the ability to both, you know, depart from its analogy, but I'm here to defend the analogy. The premise for Stinson, for unapproved commentary, and this is approved commentary . . . Judge Southwick, that is not a correct characterization of the . . . Correct it. . . . the reason why the analogy is apt, right? It's true that the Court noted in a different section of the opinion that Congress doesn't review, but in the portion of the opinion where the Court made its holding, it relied specifically on the fact that the functional purpose, the Commission uses the commentary for. It said the word functional purpose, and then it said the word function in those two critical paragraphs as the reason why we treat the commentary like a guideline. It didn't . . . But . . . It didn't rely on congressional review at all. And let me give you an example. The Congressional Review Act didn't even require agency regulations to go through congressional review until 1996. The APA wasn't even a thing until 1946, a year after Seminole Rock. So we know that what makes a regulation isn't the fact that it goes through notice and comment, and what makes a regulation isn't the fact that it's reviewed by Congress. Those two regulations existed before those two requirements did. So, in your interpretation, people can raise claims against the federal rules of civil or criminal procedure on the basis of Kaiser. Is that correct? I'm not exactly sure what the mechanism for raising those claims . . . Well, because a lot of those rules have the advisory commentary of the advisory committee. And I'm thinking in particular of discovery. I'm thinking in particular of one that we debated a year or two ago, Rule 4K2 on foreign service process. There are extensive advisory committee notes. And traditionally, the courts have taken those very seriously. That's totally right, Judge Jones. Now, I think I have a good answer to that. So, I'll bet it's not long until clever public defenders find a way to challenge the federal criminal rules. Has that been thought about? It is something I've thought about, but I don't think that it's a very big problem. And the reason is that, one, the advisory commentary is not entitled to deference. In fact, if you look at Stinson itself, Stinson rejected the . . . You're saying the advisory commentary in the federal rules of criminal procedure is not entitled to deference. Is that what you're saying? I'm saying it's not entitled to Seminole Rock controlling deference. It is in . . . of course it is . . . Even though the courts . . . won't you agree that generally speaking in matters of rules of procedure, the courts take those as, you know, biblical? Well, I don't . . . biblical, it depends on what we mean by biblical. But yes, look, every single . . . it is not a question that that is a contemporaneous statement of the court's intent in enacting those rules. Do you think the Supreme Court in Kaiser contemplated that possibility when it especially said that we're not saying we're going to upend every kind of rulemaking? I do think that the Supreme Court recognized that the . . . I mean, there was a lot of things the court was weighing. The court was considering doing away with deference altogether, right? And so, what the court did was it decided that if we're going to give this power to agencies, we're going to make them speak clearly. And so, we will . . . But your concerns about the federal rules of criminal procedure, there's not interpretations as such of those that are just sitting out there where it's the agency. The advisory committee notes are a type of legislative history that gets very serious respect, but that differentiates them from the type of interpretations that the commentary are that we're dealing with here. Stinson expressly rejected . . . But you have considered . . . the public defenders have considered that possibility? I think we have, but . . . Okay. Well, let me go on and ask you one other question, and that is . . . I'm sorry, but I'm not trying to be rude, but you've already . . . Not at all. I'm here to answer questions. The second sentence of Stinson says, We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it explains . . . unless it violates a constitution or a federal statute or is inconsistent with or a plainly erroneous reading of that guideline. How can we say that Kaiser tells us how we have to interpret commentary without implicitly overruling Stinson? You . . . Jones, our entire claim is that Stinson told us what the answer to this is. We're not asking you to overrule Stinson. We're asking you to follow it. So then we can . . . well, and I think that's a plausible argument. As Judge Nalbandian put it in one of the Sixth Circuit cases, he could decide that case without referring to Kaiser. So what's the big deal about Kaiser here? If your claim is the prohibit under the dictionary doesn't include inchoate offenses? Well, the big deal about Kaiser is that it set the benchmark and it is now the governing standard for what it is to afford a Seminole Rock deference. And you quoted the language from the beginning of the Stinson opinion. That language is the exact formulation of the Seminole Rock standard that the court discarded as a caricature of the doctrine in Kaiser. So it's not the case that what the court was doing in Stinson was just adopting that age-old, long-standing administrative rule. And I can point you to the . . . And if we cite Kaiser to somehow adumbrate the holding of Stinson, then, according to your argument, why . . . again, why does that not implicitly in Stinson, the Eleventh Circuit got overruled and it had to do with the question of the crime of violence, serious potential risk of physical harm. And interestingly, at the end of the decision, the court says, we now apply these principles to the amendment, which had to do with felon in possession. And it said, we recognize that the exclusion of felon in possession from the definition of crime and violence may not be compelled by the guideline text. Nonetheless, it does not run afoul. Well, you know, it's only subsequent jurisprudence that has told us other things about that, but that holding necessarily implies that felon in possession could have been within the compass of a crime of violence at that point, correct? Right. And that's because the court applied the lower . . . But crime of violence is real open-ended, and that . . . Right. I mean, look, imagine the Commission had a guideline that just said, we're going to enhance the sentence if you've got a prior crime of violence, and then they didn't tell us what crime of violence meant. We'd be left with the ordinary meaning of those terms. And, I mean, I don't think a defendant would be heard to say that murder can't fall within the definition of plain meaning of crime of violence, but perhaps if somebody had a jaywalking conviction, that wouldn't count. Well, if you ask . . . We would just do interpretation. But if you ask the man on the street whether when Mr. Vargas conspired to deliver over five pounds of kilos of cocaine, he was committing a drug crime, the man on the street would have said, duh. I agree. I would say, duh, as well. But that's . . . The question here isn't whether the man on the street would recognize this to be culpable conduct. The fact that he was convicted in the past demonstrates that fact. He was punished for that crime. What we're asking is whether or not it's something that should change the benchmark for the district court's discretion in deciding how to put a sentence within the statutory range. And so what the Sentencing Commission has told us is the benchmark, or is the definition that controls in order to sweep those things in is a definition that does not include conspiracy. Let me just put a finer point on what Judge Jones just said. If I told Mr. Vargas or you or my son, I prohibit you from distributing cocaine and my son conspired to distribute cocaine and I caught him and he said, I haven't violated what you said, Dad. I only conspired to distribute the cocaine. Why is that not an intellectually defensible interpretation? I, that is, but that's, I agree with that construction, but you're missing several words from this actual text that we have. I prohibit you. Right? It's an exhaustive list. We're talking about controlled substance offense means, Vergas tells us. Son, my rule to you means you are prohibited from distributing cocaine. I. A normal person would imagine that conspiring or attempting falls within that. I, I don't. I, I don't agree with that, Judge Duncan. I think that the, the, the plain meaning of the word prohibit is, the ordinary meaning of the word prohibit is to prescribe. What you've done when you've taught your son not to distribute drugs is you've forbade them to do that, but you haven't hindered them from doing it. You haven't prevented them from doing it. And so that, but what we're talking about here, the other thing about your example, which I'm prepared to accept in the colloquial sense, right? I, I don't want to sit here and be unreasonable and fight against that. The other context you're missing with that is we're talking about already sustained convictions for offenses that are doing the prohibiting, right? And so it's an offense that's doing the prohibiting in this particular language. And offenses prohibit specific things. And we have, we know what the commission has delineated are the specific things, distributing, manufacturing, dispensing, possession with intent to do those things. But none of those things include the elements of conspiracy or the elements of attempt. And that's why there's a difference here. And that's why all of these courts have recognized that the plain meaning of this text doesn't include conspiracies, just like it doesn't include possession. It doesn't include solicitation. Counsel, you alluded... Sorry. No, go ahead. Go ahead. You alluded to the proposed amendments to the guidelines. So do those help you? Do they hurt you? Or do we make nothing of them because they're just proposed? I mean, clearly, they're gonna resolve this ambiguity if the rules or the commentary is approved, the revised guideline, I should say. So, so what does that do to our case here? Well, it doesn't change anything about our case, right? Well, our interpretation of the commentary, the guideline as it currently is. Well, it would... I mean, courts are loathe to give, you know, remedial measures and, you know, post-enactment history a kind of controlling weight in the interpretive inquiry. I-I-I'm not... I think that what you would say about that is it... I tend to think that it shows that the commission recognizes what it has always recognized, that it wasn't interpreting the word prohibits whenever it listed the inchoate commentary. It was just separating those separate concepts. If there's ambiguity, genuine ambiguity, so we're applying Kaiser, do you lose? In other words, if we go farther than plain text and there's no ambiguity and we engage in the Kaiser analysis, don't you lose that? I suppose, but to do that, you would have to say that it's reasonable to interpret the word prohibits to mean something that there's no actual example of it having that meaning in the wild. The government hasn't been able to point you to any situation in which the words offense and prior conviction and under state law are used with the meaning of prohibit they give that term. So... but yes, if it was genuinely ambiguous, you would go to those other indicators and I think we're prepared to say that we would not be able to prevail there. But this is not genuine ambiguity, Judge Wilson. This is clear text and five courts have recognized that and we think this court is saying. Counsel, I have two quick questions, both related to Judge Wilson's question. There's no reason that we should wait for November to come around because it's not going to affect this case because it would be ex post facto and all of that, right? Right. Second, does the rule of lenity have any role to play if it's not plain? Would we shift instead from all those factors to the rule of lenity? I am in my answer to Judge Wilson. Um... I think... I will say that the rule of lenity is an option, right? And the amicus has talked about the rule of lenity in this case. It is an open question in the federal courts. The federal circuit has grappled with where the veterans' canon, which is a similar canon of interpretation, fits in with Chevron and even this Kaiser deference. Um... in Cargill v. Garland, this court obviously just reinforced that lenity is a, you know, a canon of interpretation that is very important... Yeah, but Cargill was about the question of liability. This is a question of sentencing. Is there any example of using lenity for sentencing rather than liability? I do, and the reason is, is because... And I understand you'd be referring maybe to Beckles there, right? And we're not... obviously the guidelines aren't talking about regulating conduct. But the rule of lenity is different than vagueness doctrine, because what it is is it's a canon of interpretation. It's telling us how to figure out... Right, but it's a canon of interpretation to tell us that the citizen wants to know, if I do X, am I breaking the law? Here, we know what the law is. You're not allowed to conspire. The only question is the consequence. Do we apply lenity to the consequence or just the liability question? We apply it to the text. It's a canon of construction, right? It's not something that we're going to be lenient because... We don't apply it to all texts. We don't apply it to civil statutes. We don't apply it to all... That's my question. Does it apply only to liability statutes or does it apply also to sentencing provisions? It applies in the criminal context and also in places where there's maybe forfeitures and fines. Justice Gorsuch has certainly argued that much in his concurring opinion in Woodard v. United States last year that lenity should be extended to things like fines and everything else. But I just want to focus us back here. All I'm saying is that it's an interpretive canon and so it has to come in somewhere when we're talking about the interpretive toolkit. We would obviously favor the reasonable doubt version of lenity. There's the grievous ambiguity version out there but we don't think this case requires the court to make that determination because you're not dealing with two equally plausible constructions of this text. You're dealing with clear language that at the minimum our reading is the best reading because it's the ordinary meaning of the term prohibits. And for these reasons this court should reverse. Thank you, Your Honors. And may it please the court. Audrey Manis for the United States. This court should affirm when Andres Vargas tried to obtain from an undercover officer he committed his third controlled substance offense, qualifying him as a career offender under the United States guidelines. We know this because the text, structure, purpose, and history of the guidelines tell us so and they have done so for over three decades. Let me be clear on the government's position. The clarifying instructions in Kaiser v. Wilkie apply to the United States sentencing guidelines. Under a proper application of Kaiser Mr. Vargas' drug trafficking conspiracy is a controlled substance offense and it is unambiguously so under career guidelines, the career offender guidelines section 4B1.1 and 1.2. If for whatever reason this court decides that Kaiser does not apply, then the landscape is unchanged. Sentencing continues to apply and the commentary is deserving of deference. Mr. McInnis, you waived uninterrupted time? I did, your honor, yes. Well, thank you. Sorry to interrupt, but here I am. Your first point you said the government's position is that Kaiser does apply to the commission. Is that unambiguous? To use word, mustn't play today? Or is there really an argument that you could structure that it's not a clean fit when we're looking at Kaiser? Certainly, your honor, there is an argument that it is not a clean fit. The sentencing commission is a unique agency or commission. It's in the judicial branch, not in the executive branch. The guidelines are now advisory which makes them somewhat differently situated than administrative rules. And so there are a number of factors as recently explained in Judge Luck's dissent in Dupree why Stinson may continue to apply and Kaiser does not affect the guidelines at all. But is Stinson the principal barrier to making that argument? I don't understand your question, your honor, I'm sorry. Why don't you keep going and see if I can rephrase it. Okay, thank you. However, it is the government's position and it is taking this in several opposition to certiorari and is taking it in this case that Kaiser does apply. There is enough similarity between the guidelines and agency rules and the commentary and agency interpretations and of course then we have Kaiser's footnote three that acknowledges that Stinson was among the legion of cases that have applied seminal rock deference. Let me talk about Council, before you do that, you mentioned the dissent, the 11th Circuit dissent. What do you think is the most critical error in both the majority opinion I believe by Judge I'm sorry the majority opinion and the concurring opinion both prior Jill Pryor and William Pryor. Your honor, the critical error in the majority opinion is that it failed, it considered the text and the text alone, it failed to consider the structure history and purpose of the guidelines and Kaiser directs courts to consider those I read it as a direction equally across the board, text, structure history and purpose. All four of those factors should be considered and no court of appeals has done that fully yet. This court has the opportunity to do so. In the concurring opinion that held that Stinson applies but that the commentary was conflicting I think again it reads the text of the guideline too narrowly but it also doesn't honor the way that Stinson looked at inconsistency. Stinson took a very clear view of inconsistency such that it's only inconsistent if following the dictates of one results in violating the dictates of another and that's not the case here. You can follow the text of the commentary and there is no conflict between the two. But four circuits have held just under Stinson and then also the concurrence here that we were just talking about that you shouldn't defer can you address that? Yes your honor. Several of those circuits are similarly situated to the panel opinion here which is there is binding precedent and that Kaiser does not unequivocally overrule or abrogate that prior precedent. Right but no but even without Kaiser that there should be no deference. I see your honor. The defendant's position is that the public defender's position is that they win either way. Yes your honor. So can you address why you would win under Stinson if it's true that you shouldn't defer under the reading of Stinson that four of our circuits plus another concurring judge have deferred to Stinson because the guideline that describes laws that prohibit import export dispensing distribution that language includes laws that hinder export import distribution dispensing etc. If we don't buy that definition though I mean conspiracy is not in the guideline correct? Conspiracy is in the guideline in the language with the word prohibits. The guideline encompasses If we say that prohibits means anything that hinders anything that I guess you have to stretch that a little bit don't you? I don't think so your honor. Why didn't they just mention it? They could state it as they proposed to do in their amendments. There's a number of ways to include it. They could have stated conspiracy attempt in aiding and abetting. They could have said in co-ed offenses. They could have said complete or incomplete drug offenses. And they could have said laws that prohibit the manufacture import export and distribution of controlled substances. Which is what they did here. There's not one way to include in co-ed offenses. There is one of several and that is what the commission did here. And we know they did that. If you look at the history of this guideline they've done it from the very beginning. In the original text they listed a number of federal statutes and they said and similar offenses. Does it matter? I mean here the commission even though it wasn't required to it noticed this in co-ed offense the commentary. It noticed it to the public. It submitted it to congress. What interpretive weight if any does that merit? I think it plays in two parts of the Kaiser inquiry. First it plays into the history of this guideline. Certainly that commentary was first submitted just a couple of months after the guideline itself was submitted. And the commission said that it was adding the commentary as part of a broader effort to enhance understanding and clarity without making substantive changes. Here's the commission saying hey just in case there's some question here's some commentary to make things clear. So it's describing what similar offenses were. And then ten other times the commission has done this where it has put the commentary forward for notice and comment and has submitted it to congress without substantive discussion, without objection. And there have been times like in 1995 when it was submitted to congress and congress rejected certain amendments to the commentary but it let this commentary pass through without objection. So I do think that plays a role in considering the history of the guideline. I also think the purpose of the guidelines generally should play a role here and Kaiser tells us it should. We need to look at the implementing statute 28 U.S.C. 994 and I think Judge Jones acknowledged this when my colleague Mr. Howes was up is that the guidelines goal is to promote certainty and fairness in sentencing and avoid unwarranted sentencing disparities. It says that not only in 991B but again in 994 and there's very much an emphasis on we need to treat similar offenses  How do we know what are similar offenses? We can look at how congress has treated conspiracy, attempt and aiding and abetting. If you look at 21 U.S.C. 846, what does it say? It says that conspiracy and attempt should be treated should be punished exactly the same as the substantive offense. What is the government's position of whether the new guideline would be applicable if it passes in November? It would rely on an ex post facto argument, the other side that it wasn't applicable but if your argument is that it was applicable the whole time, how does that play? Well, your honor I think it depends on what this court decides of course. But if we waited for any, just assume argument I'm not saying we, not foreshadowing at all Certainly I don't I don't think it's appropriate to necessarily wait for the commission there's no certainty that, I know this is a priority and the amended language, there are two versions of the amended language that are now out for notice and comment they came out earlier this month so that needs to go through that period and then be submitted to Congress of course, so it may not get resolved this calendar year Assume, hypothetically, that it were going to be resolved and it was going to be very clear that crimes were included in the new version what say you about ex post facto and whether the new rule would apply The government's position would be that those in code offenses were always included and that So we could apply the new rule instead of the old rule We would argue that you would apply the rule which is in code offenses are included You'd apply light born Yes, absolutely What do you do with lenity I don't think you need to reach lenity If it's ambiguous as to whether prohibit includes these in code things which assume arguendo that you're right but it's ambiguous If it is ambiguous then you go to step two of Kaiser, you do not go to lenity Why not? Why isn't that in the toolbox Because lenity applies only after considering and this is right from United States vs. Castleman only after considering text structure, history, and purpose, that sounds familiar There remains a grievous ambiguity or uncertainty in the statute such that the court must simply guess as to what Congress or the implementing issuing body intended We don't have to guess here because we go to Kaiser step two is the commission's interpretation So it's not grievous, it's ambiguous but not grievous Yes, your honor, I would agree with that You think it is ambiguous I do not think it's ambiguous If you reach that step In a hypo, you would say it was not grievously ambiguous even though multiple circuits have held to the contrary It was actually plain meaning the other way The guideline unambiguously includes in code offenses If there is some question it's not grievous ambiguity but if there is some question then the court asks Is the commission's interpretation reasonable And it absolutely is here It is supported by those same things text structure, history, and purpose And then of course it is the commission's official position I don't think there's any dispute on prong three of Kaiser. Is it deserving Is it of the character and nature deserving of deference Commentary is official This commentary in particular has been around for three decades Miss Madness Your friend on the other side said to interpret prohibit in this way would be he's going to think this is not really what I said but something along the lines of a unique way to interpret to give it this sort of meaning that leads to hinder and anything that hinders That's not what the 11th circuit was concerned about Jill Pryor wrote that it would become unlimited I don't think she included jaywalking but loitering I think she said and whatever else Respond to that First there's a common sense argument that the end goal, the goal is to stymie drug trafficking So is the end goal of the crime we are looking at drug trafficking Conspiracy, yes. Aiding and abetting Absolutely yes. Attempt, yes Loitering Maybe 1 in 100 cases Money laundering, maybe 1 in 10 cases That is informed by again the structure, history and purpose Who draws that line? I mean you just drew it but it seems very faint to me I don't think so your honor I think the Supreme Court has been able to draw that line in the context of the first amendment Congress shall pass no law prohibiting the free exercise of religion In 30 years has any court applied, has the government asked any court to apply this guideline to loitering or money laundering? No your honor And in fact there's a stark difference money laundering guides from my perspective are much more stringent than the drug What's going to happen if it makes no sense? I agree and that's that common sense argument and there is to respond to Judge Wilson's question there is a way to draw the line it's been done in that first amendment context and in fact in the case of Fulton v. City of Philadelphia in Justice Alito's concurrence he relied on dictionary definitions of prohibits to mean both to forbid and to hinder he said that was the natural reading in the Constitution To me that's key hindrance is one thing, forbidding is another and in this context it seems the most natural reading of prohibit is to forbid we forbid you to conspire to distribute possess with intent to distribute I disagree your honor and I point to Judge Duncan's hypothetical which is when you instruct somebody I prohibit you from doing something you are both forbidding them from reaching the ultimate end goal but from taking substantial steps towards that goal, from planning towards that goal and dictionary definitions support both the narrow definition that you just gave and the broader definition in Judge Duncan's hypothetical and that's why again we have to look to structure, history and purpose and certainly those that support the broader reading in this case Let me ask you a couple other courts several other courts have gone with Kaiser and one of them used Kaiser to overturn the intended loss section commentary in regard to loss in financial crimes and another one overturned the $500 minimum on credit cards now I agree with Judge Nalbandian that that would have had a hard time being sustained under Stinson but take just the question about loss how many other guidelines are at risk with the Kaiser approach here If this court adopts a faithful application of Kaiser that includes not only looking at the text but also the structure history and purpose I think the guidelines are largely safe however if the court takes the approach unfortunately that the Third Circuit took in the Sear a very hypertextualist reading where they didn't even acknowledge the history and purpose of the guidelines generally or the career offender guidelines specifically every guideline is up for grabs it's going to be a you will see a lot of litigation over this and you've seen it in the Third Circuit there's been half a dozen cases already as you noted Judge Jones that are revisiting various guideline provisions I'm getting back to your point about history that the different iterations of the definition of controlled substance offense previously included in COA defenses I'm having trouble understanding a theory that all of a sudden the commission decided to slightly alter the wording and then to in order to exclude in COA defenses which is I think what the other side is asking for courts to do I don't even understand the theory I haven't heard a theory for why the commission would have done that surely there would be some evidence some commentary some explanation hey we're making a change in this decades old interpretation do you have any can you enlighten me on that I am not aware of any theory Judge Duncan and I think the clear reading of the history here is that the commission from the very beginning always intended that if the language of the clear offender guideline and the definition of controlled substance offense include in COA defenses and when it is made changes it continues to whether it's through the and similar offenses that we first saw or through the language the word prohibits being read broadly that I am not aware of any evidence of the commission of an intent from the commission to exclude in COA defenses and it didn't go to congress and say here's what our plan is to exclude because we don't think the conspirators to distribute the cocaine really have committed controlled substance offenses correct they have never gone to congress and said that no one's making the argument I take it that this proposed amendment is a clarifying amendment as opposed to a actual there's a whole body of law I'm sure you're aware of if an amendments clarifying or not that's not been briefed no that has not been briefed if you're talking about the amendment that is up for notice and comment right now the commission has not made a statement one way or the other whether it be clarifying or substantive it has acknowledged the circuit split and has proposed two different versions of language and then it has asked a question for public comment should we remove in COA defenses entirely which again suggests that they have always included in COA defenses but that amendment doesn't pass or takes time to pass and the government persists in its opposition to serve which it's done three times do you agree that the consequence of that is that persons that have conspiracy convictions are sentenced to career offender stat prison time differently around the country the consequence of the government's continued opposition and assurance to the Supreme Court that the commission may resolve this means that at the moment similarly convicted persons are serving different prison terms yes there are there are going to be sentencing disparities around the country but a proper application of Kaiser would be the right result here and yet the SG is not urging that as to circuits that haven't properly applied Kaiser no the SG has recognized the Supreme Court's position which is generally the court leaves disputes relating to the guidelines up to the commission to resolve and it said so in Braxton and other cases and a similar just clarifying question am I right or am I wrong that the only issue in this case implicating 4B1.2 in this controversy is his predicate conviction that his instant offense because he has a factual basis to dismiss count two that qualifies for career offender status regardless of the commentary as relevant conduct I don't believe so your honor I think he has two predicate offenses are possession with intent to distribute amphetamines which is qualifies nobody disputes that there is a conspiracy great conspiracy doesn't count depending on how we resolve that's the defendants argument instant offense the instant one is also a conspiracy but he pled to a factual basis that was the undercover cocaine buy he pled to it how is that not relevant conduct his conviction which is what the guideline talks about is for guidelines incorporate unless I'm wrong relevant conduct they do your honor yes but if we're talking about the career offender guidelines specifically I think we need to look at the conviction of record which is conspiracy and I know Mr. Vargas has taken the position that it is not a qualifying offense and the government has acknowledged that is the argument wouldn't you agree that one easy way for the government to evade an adverse ruling about prohibit if it doesn't including coed offenses just to charge the underlying offense in most cases yes on a guilty plea for the underlying offense certainly that would be a goal if the government receives an adverse ruling in front of this court so that completely undermines the quest for uniformity and treating similar misconduct alike doesn't it absolutely yes it does and it is yet another reason why we look at how are conspiracies attempts in aiding and abetting treated treated exactly the same as the substantive offense when we're talking about drug trafficking I know aiding and abetting did come up when Mr. Howes was up here and I agree with him that that is to the extent that court rules in favor of Mr. Vargas aiding and abetting is a unique situation it is however the offense of conviction in an aiding and abetting case is actually the underlying offense this court has said that in United States versus Raban and in other cases that the defendant guilty is guilty through the aiding and abetting statute section 2 of the actual underlying offense 21 U.S.C. 841 so underscoring the point that these are all offenses the court has treated similarly so counsel that means that the word prohibit obviously includes aiding and abetting someone absolutely I agree with you completely Judge Shumkin yes and that would be quite an anomalous result to end up with the word prohibiting including aiding and abetting but not including conspiracy and attack a faithful application of Kaiser here honors the Supreme Court's opinion and it honors the text structure, history and purpose of the guidelines it also demonstrates that conspiracies like Vargas' as well as attempts in aiding and abetting are controlled substances under section 4B 1.2 the district court got it right when it sentenced Vargas as a career offender and this court should affirm if there are no further questions I'll yield the rest of my time thank you I have a couple points to make on rebuttal your honors I think I'll start Judge Duncan with the point you just made about it is not the word prohibit that includes aiding and abetting in this enumeration of the completed offenses Gonzalez vs. Guinness Alvarez tells us when we're dealing with are there really an enumeration of completed offenses? It's just they're verbs well they're nouns manufacture, import, export if Congress had wanted to enumerate offenses it could have done so as it did in prior versions of the definition sure, to be very technical you're right, what they're enumerating is elements of an offense and elements it doesn't use the term elements the one above it uses the term elements but this one doesn't because this is the categorical if Congress had wanted to say elements it would have used the word elements which it did in the definition right above it Judge Duncan that's not a correct restatement of the law, the law as it is right now is when Congress or as we're talking about here, the sentencing commission uses the word conviction that implicates the categorical approach the overall context here I just meant the definition of crime of violence in 4B1.2A uses the term elements that's true but that's because it's talking about a specific element there look, my argument doesn't rely on whether or not you think this is a list of offenses or a list of elements the Supreme Court has told us this is a list to some extent, it doesn't list what is not included that is specifically excluded and this court did affirm an enhancement based on mere possession in 2006 and the Supreme Court said summarily that was wrong and other courts were doing it too it's not just this court that had that wrong and I understand the instinct to want to look at this and say this is a list those things are like the list but the main problem here is that the commission has chosen the way to enumerate these things and it has separated attempt and conspiracy and I did want to make this point the Supreme Court told us in 1899 in Keck v. United States that when we're talking in the context of offenses, attempt and conspiracy are different, so when you tell your son not to distribute drugs that's different than saying my son was convicted of an offense to distribute drugs, if you said that you would not be saying and could not be saying that he was convicted of an offense to conspire to distribute drugs. The amicus brief in this case which I know you've read it argues that increasing criminal sentences based on the guidelines commentary is not just unwise but unconstitutional do you agree with that? We are not strictly taking a position on that, we are not urging that contention here that view is a separate view of lenity that is more robust than what I understand the Supreme Court to have relied on before, where as I was discussing earlier, the Supreme Court uses lenity as a background, almost clear statement rule in the criminal context as a canon of construction it is certainly, I think relevant, the reason why that rule exists is something you know, furthers that policy statement the amicus has recognized and that we should strictly construe statutes because after all liberty is on the line and Judge Bevis in the Third Circuit has you know, well sentencing is not on the line in the same way that the fair notice of the criminal, the fundamental criminal conduct is on the line as you know, but anyway what other provisions of the guidelines off the top of your head, in addition to the ones that courts have already allegedly dealt with under Kaiser are at risk because of commentary Judge Jones, the only provisions that are at risk are the ones that the commission might decide I mean, the commission has the tools to, Chief Judge I'm just asking you, yes, but the commission isn't going to take them all up at once and review the entire two volumes, okay, so what ones are the public defenders thinking are vulnerable? Certainly we've raised the argument that you mentioned in the Third Circuit case about intended loss there's arguments on both sides of those, we would obviously advocate the position that . . . Thus give me your position, name some of the guidelines. I actually don't have a list for you Judge Jones I mean, I haven't gone through and looked to see which ones I mean, I think that's because a lot of the guidelines do employ ambiguity or do you know, list a term in the text and then put the entire definition in the commentary, and so there's nothing going to be . . . About terms of supervised release we've had a lot of cases about those lately, I guess we could go to town on those, huh? We could go to town on any guideline that doesn't or any commentary that doesn't reasonably interpret the text in the guideline that's the only thing we're talking about here is where a court would read the text and think that the commentary is not a reasonable interpretation of it Could I ask one more question? If I . . . Over here If I agree with you that there is no ambiguity in 4B1.2 the guideline but I'm not convinced that Stinson isn't still binding on us how is the commentary inconsistent when it's just adding in Co-8 crimes? If I see the commentary is just additive, it wouldn't be inconsistent under Stinson even if it wouldn't get Kaiser deference. You see my . . . I understand the question, Judge Higginson. I think that to say that it is adding is to say that it is inconsistent and that's what the Fourth Circuit recognized in Campbell because what you're saying there is that we have a definition that's complete in the text and that another definition is adding to it so that is by its nature inconsistent to be adding to it, right? And so it would have to be through this use of prohibit. If you'll allow me, I would like to just give a direct answer to Judge Elrod about the ex post facto because that is important the time of the clause. So Mr. Vargas was convicted and the guideline as it presently is constituted applied so it would apply to him but of course Judge Lake can consider the proposed amendment under 3558A as a basis for upward variance and that's another reason why this guy won't fall if you apply Kaiser to the guidelines. Thank you, Your Honors. Thank you, Counsel. That will conclude the arguments for today. The court is adjourned until 9 a.m. tomorrow morning. Thank you.